STATE of Maine

v.

Raymond ROLLS.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 20, 1991.

Decided Nov. 6, 1991.

William R. Anderson, Dist. Atty., Patricia Worth, Asst. Dist. Atty., Belfast, for the State.

Brenda M. Buchanan, Searsport, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

CLIFFORD, Justice.

Raymond Rolls appeals his convictions for attempted murder (17–A M.R.S.A. §§ 152, 201 (1983 & Supp.1990)) and aggravated assault (17–A M.R.S.A. § 208 (1983)) following a jury trial in Superior Court (Waldo County, *Chandler, J.*). Rolls contends that (1) the State should not have been allowed to inquire into his prior conviction for burglary after he had completed his testimony, (2) the evidence identifying him as the perpetrator was tainted and should have been excluded, and (3) the evidence was insufficient to support the convictions. Finding no error or abuse of discretion, we affirm the convictions.

On March 9, 1990, Kathleen Darres was at home on Green Acre Road in rural Lincolnville taking care of her daughter Armindy, who had come home from school ill. A man whom Kathleen had never seen before came to the door twice within a 30–minute period of time, purportedly asking for directions. Kathleen spoke with him face-to-face both times. On his second visit, he grabbed Kathleen by the neck, attempting to strangle her, and said he was going to kill her. She forcibly resisted the attack. Armindy observed much of the struggle. After Kathleen bit the attacker on the finger, he retreated and eventually left.

I.

At trial, before Rolls presented his case, the court ruled that the State could use three of Rolls's prior convictions to impeach his credibility should he take the stand. *See* M.R.Evid. 609. When he did take the stand, however, the State forgot to ask about the convictions and Rolls was dismissed. The State immediately realized its mistake and the court allowed the prosecutor to recall Rolls and ask him about a single prior burglary conviction.[1] Rolls contends that in allowing the State to recall him to the stand for the purpose of inquiring about his prior burglary conviction, the court abused its discretion and violated his privilege against self-incrimination. We disagree.

The scope and manner of cross-examination are matters for the discretion of the court and the exercise of that discretion will be upheld on appeal unless it is abused, i.e., unless it interferes with the rights of the parties to a fair trial. *State v. White*, 456 A.2d 13, 15 (Me.1983); *State v. Samson*, 388 A.2d 60, 65 (Me.1978); *State v. Gervais*, 317 A.2d 796, 800 (Me.1974); M.R.Evid. 611(a); Field & Murray, *Maine Evidence* § 611.1 (2d ed. 1987). By testifying, a defendant places his general character for truth and veracity on the line and

---

1. The State asked the following question:
    Mr. Rolls, are you the same Raymond C. Rolls, date of birth February 12, 1941, who was convicted in the Cumberland County Superior Court on June 12, 1976, of the crime of burglary with the use of a firearm?
    Rolls answered in the affirmative. *See State v. Toppi*, 275 A.2d 805, 813 (Me.1971).

must be prepared to be cross-examined concerning appropriate prior convictions. *Gervais,* 317 A.2d at 799. A prior conviction of burglary is admissible to impeach the credibility of a defendant charged with attempted murder and assault. *State v. Brown,* 479 A.2d 1317, 1319 (Me.1984); M.R.Evid. 609.

▮ In the circumstances of this case the court did not abuse its discretion by allowing the State to recall Rolls to the witness stand to inquire about the prior burglary conviction when the initial ruling to allow the impeachment had been made prior to Rolls presenting his evidence, the failure to make the inquiry on cross-examination was inadvertent on the part of the State, and the request to recall came immediately after the defendant had stepped down. *See State v. Trafton,* 425 A.2d 1320, 1323 (Me.1981); *State v. Kingsbury,* 399 A.2d 873, 874–75 (Me.1979); Field & Murray, *Maine Evidence* § 611.1 (2d ed. 1987). Nor did allowing the State to recall Rolls violate Rolls's privilege against self-incrimination.[2]

> Once having elected to take the witness stand in his own behalf, the [defendant] waived his constitutional right against self-incrimination and thereafter was required to submit to proper cross-examination until the same was deemed by the presiding justice to be completed.

*State v. Coty,* 229 A.2d 205, 215 (Me.1967).

## II.

Rolls next argues that the trial court should have granted his motion to suppress evidence of the Darreses' identifications of him from a photo lineup, along with any subsequent in-court identifications. He argues that his photo was the only one in the lineup that matched the descriptions of the attacker given by the Darreses, that both the Darreses knew that the other had picked him out as the attacker, and that both were later told that he was the main suspect. Thus, Rolls argues, the lineup procedure was impermissibly suggestive and consequently tainted all subsequent in-court identifications made by the Darreses.

▮ In determining the admissibility of an identification, the trial court must first determine whether the identification procedure was impermissibly suggestive. If it was, the court must then determine if the identification is reliable in spite of the suggestive influence. *State v. True,* 464 A.2d 946, 950 (Me.1983); *see also Neil v. Biggers,* 409 U.S. 188, 196–201, 93 S.Ct. 375, 380–383, 34 L.Ed.2d 401 (1972). It is the defendant's burden to establish by a preponderance of the evidence, that the identification procedure was suggestive. *State v. Cefalo,* 396 A.2d 233, 238 (Me. 1979). If the defendant meets that burden, then the State must show by clear and convincing evidence that in the totality of the circumstances, the reliability of the identification outweighs the suggestiveness of the procedure used. *True,* 464 A.2d at 950; *see also Neil,* 409 U.S. at 199, 93 S.Ct. at 382 (lists factors to be considered by the court). We review the court's findings for clear error.

Both Kathleen and Armindy gave descriptions of the attacker to investigators at the sheriff's department shortly after the attack. The descriptions reminded one of the investigators of Rolls, who had recently been released from the Maine State Prison and was living on the same road as the Darreses. The officers immediately procured a six-photo lineup from the prison that included a photo of Rolls. After removing one of the photos because one of the detectives believed that Kathleen probably knew the subject, Kathleen and Armindy separately selected the photo of Rolls as being the attacker. One of the detectives confirmed to Kathleen that they had selected the person who was a suspect. At trial, Kathleen and Armindy both identified Rolls as the perpetrator.

▮ The trial court found that Rolls failed to meet his burden of demonstrating that the photo lineup was impermissibly suggestive so as to taint any subsequent identification. That finding is not clearly erroneous. The record supports the court's finding that the photo lineup was made up

2. *See* U.S. Const. amend. VI; Me. Const. art. I, § 6.

of a good representative group of five men having a resemblance to the previously given descriptions of the attacker. *Cf. State v. Boucher,* 376 A.2d 478, 480 (Me.1977) (failure of all subjects in lineup to closely resemble one another does not necessarily tend to single out defendant). There were no suggestive words used by the officers before Kathleen and Armindy made the selection from the lineup. A five-photo lineup, combined with a later indication that the victims have chosen the right person, does not necessarily create a substantial likelihood of misidentification. *State v. Toussaint,* 464 A.2d 177, 180 (Me.1983); *see also State v. Commeau,* 438 A.2d 454, 458 (Me.1981).

### III.

■ Rolls finally argues that the evidence is insufficient to support the convictions. In testing the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether a jury could rationally find every element of the criminal charges beyond a reasonable doubt. *State v. Philbrick,* 551 A.2d 847, 852 (Me.1988) (citing *State v. Barry,* 495 A.2d 825, 826 (Me.1985)). The main issue at trial was the identification of Rolls as the perpetrator. Both Kathleen and Armindy had sufficient opportunity to observe the attacker, and both identified Rolls as being the attacker. The evidence was sufficient.

The entry is:

Judgments affirmed.

All concurring.